# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CANDICE KRAEMER, individually and on behalf of all others similarly situated,<br><br>v.<br><br>KEURIG DR PEPPER, INC. | Case No. _____<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.       Like many other companies across the United States, Keurig Dr Pepper, Inc.'s ("KDP") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.       That hack led to problems in timekeeping and payroll throughout KDP's organization.

3.       As a result, KDP's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4.       Candice Kraemer is one such KDP worker.

5.       KDP could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6.       But it didn't. Instead, KDP pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7.       KDP made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8.     After significant delay, KDP made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9.     KDP's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10.     KDP's failure to pay wages, including proper overtime, on time and in full for all hours worked to its workers in New Jersey also violates the New Jersey State Wage and Hour Law (NJSWHL), N.J. Stat. Ann. § 34:11-56a *et seq.*, and the New Jersey Wage Payment Law (NJWPL), N.J. Stat. Ann. § 34:11-4.1, *et seq.*

11.     Kraemer brings this lawsuit to recover these unpaid overtime wages and other damages owed by KDP to her and KDP's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but KDP's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12.     This action seeks to recover the unpaid wages and other damages owed by KDP to all these workers, along with the penalties, interest, and other remedies provided by federal and New Jersey law.

## JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because KDP is headquartered in this District.

**PARTIES**

16.     **Plaintiff Candice Kraemer** is a natural person.

17.     Kraemer was, at all relevant times, an employee of KDP.

18.     Kraemer has worked for KDP since March 2021.

19.     Kraemer worked for KDP in New Jersey.

20.     Kraemer represents at least two groups of similarly situated KDP workers.

21.     Kraemer represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of KDP (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22.     Kraemer represents a class of similarly situated workers under New Jersey law pursuant to Federal Rule of Civil Procedure 23. This "New Jersey Class" is defined as:

> **All current or former non-exempt employees of KDP (including its subsidiaries and alter egos) who worked in New Jersey at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23.     Throughout this Complaint, the FLSA Collective members and New Jersey Class members are referred to jointly as the "Similarly Situated Workers."

24.     **Defendant Keurig Dr Pepper, Inc. ("KDP")** is a foreign corporation.

25.     KDP is headquartered in this District.

26.     KDP may be served by service upon its registered agent, **CT Corporation System, 155 Federal St., St. 700, Boston, MA 02110**, or by any other method allowed by law.

27.     At all relevant times, KDP has been doing business under the assumed name, "Keurig Dr Pepper."

28.     KDP's subsidiaries and alter egos include, but are not limited to:

- Green Mountain Coffee Roasters
- Krispy Kereme Donuts
- Cinnabon
- Kahlúa
- Snapple
- Panera Bread at Home
- Newman's Own
- Peet's Coffee
- Dr. Pepper
- 7-Up
- Sunkist
- A&W Root Beer
- Canada Dry
- Schweppes
- Orient Express
- IBC
- Crush
- Cactus Cooler
- Royal Crown Cola / RC Cola
- Big Red
- Evian
- Straight Up Tea
- Deja Blue
- Mott's
- ReaLemon
- Yoo-Hoo
- Swiss Miss
- Venom Energy
- Clamato
- Hawaiian Punch

29.     At all relevant times, KDP exerted operational control over its subsidiaries and alter egos.

30.     At all relevant times, KDP had the authority to set pay practices for workers of its subsidiaries and alter egos.

31.     At all relevant times, KDP substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

32.     At all relevant times, KDP had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

33.     KDP employed and/or jointly employed, with its subsidiaries and alter egos, Kraemer and the Similarly Situated Workers.

34.     KDP and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

35.     KDP and its subsidiaries and alter egos are joint employers for purposes of New Jersey Law.

36.     Throughout this Complaint, KDP and its subsidiaries and alter egos are referred to jointly as "KDP."

COVERAGE UNDER THE FLSA

37.     At all relevant times, KDP was an employer of Kraemer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38.     At all relevant times, KDP was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39.     KDP was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

40.     During at least the last three years, KDP has had gross annual sales in excess of $500,000.

41.     KDP was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

42.     KDP employs many workers, including Kraemer, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

43.     The goods and materials handled, sold, or otherwise worked on by Kraemer and other KDP employees and that have been moved in interstate commerce include, but are not limited to, food and beverages.

### FACTS

44.     KDP is a producer and distributor of hot and cold beverages. KDP, https://www.keurigdrpepper.com (last visited May 5, 2022).

45.     KDP is the eighth largest food and beverage company in the U.S. KDP, Our Company, https://www.keurigdrpepper.com/en/our-company/overview (last visited May 5, 2022).

46.     KDP operates over 100 wagehouses and distribution centers in the U.S. KDP, Our Company, https://www.keurigdrpepper.com/en/our-company/overview (last visited May 5, 2022).

47.     KDP employs about 27,000 people. KDP, Our Company, https://www.keurigdrpepper.com/en/our-company/overview (last visited May 5, 2022).

48.     Many of KDP's employees are non-exempt hourly and salaried workers.

49.     Since at least 2021, KDP has used timekeeping software and hardware operated and maintained by Kronos.

50.     On or about December 11, 2021, Kronos was hacked with ransomware.

51.     The Kronos hack interfered with the ability of its customers, including KDP, to use Kronos's software and hardware to track hours and pay employees.

52.     For at least a portion of time following the Kronos hack, KDP failed to keep accurate track of the hours that Kraemer and Similarly Situated Workers worked.

53.     Instead, KDP has used various methods to estimate the number of hours Kraemer and Similarly Situated Workers work in each pay period.

54.     For example, KDP issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

55.     As a result of KDP's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

56.     Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

57.     Kraemer is one of the thousands of employees affected by these pay and timekeeping practices.

58.     Instead of paying Kraemer for the hours she actually worked (including overtime hours), KDP simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Kraemer's actual hours worked and regular pay rates, in multiple workweeks.

59.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

60.     KDP knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

61.     KDP knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

62.     KDP could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

63.     Instead of accurately tracking hours and paying employees their overtime, KDP decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

64.     It was feasible for KDP to have its employees and managers report accurate hours so they could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

65.     But KDP chose not to do that.

66.     In other words, KDP pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

67.     Kraemer is just one of the many KDP employees who had to shoulder the burden of this decision by KDP.

68.     Kraemer was a non-exempt hourly employee of KDP.

69.     Kraemer regularly worked over 40 hours per week for KDP.

70.     Kraemer's normal, pre-Kronos hack hours are reflected in KDP's records.

71.     Since the Kronos hack took place, KDP has not paid Kraemer on time, if at all, for her actual hours worked each week.

72.     Since the hack took place, KDP has not been accurately recording the hours worked by Kraemer and its other workers.

73.     Even when KDP has issued payment to Kraemer for any overtime, the overtime is not calculated based on Kraemer's regular rates, as required by federal law.

74.     KDP was aware of the overtime requirements of the FLSA.

75.     KDP nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Kraemer.

76.     KDP's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

77.     The full overtime wages owed to Kraemer and the Similarly Situated Workers became "unpaid" when the work for KDP was done—that is, on Kraemer and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

78.     At the time KDP failed to pay Kraemer and the Similarly Situated Workers in full for their overtime hours by their regular paydays, KDP became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

79.     In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

80.     Any payment made by Ascension to LeFlor or the Similarly Situated Workers that Ascension may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

81.     The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

82.     Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to KDP's acts and omissions resulting in the unpaid wages in the first place.

83.     Kraemer and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by KDP under federal and New Jersey law.

COLLECTIVE ACTION ALLEGATIONS

84.     Kraemer incorporates all other allegations.

85.     Numerous individuals were victimized by KDP's patterns, practices, and policies, which are in willful violation of the FLSA.

86.     Based on her experiences and tenure with KDP, Kraemer is aware that KDP's illegal practices were imposed on the FLSA Collective.

87.     The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

88.     These employees are victims of KDP's respective unlawful compensation practices and are similarly situated to Kraemer in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

89.     The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

90.     Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

91.     KDP's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

92.     The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

93.     Kraemer incorporates all other allegations.

94.     The illegal practices KDP imposed on Kraemer were likewise imposed on the New Jersey Class members.

95.     Numerous other individuals who worked for KDP were were not properly compensated for all hours worked, as required by New Jersey law.

96.     The New Jersey Class is so numerous that joinder of all members of the class is impracticable.

97.     KDP imposed uniform practices and policies on Kraemer and the New Jersey Class members regardless of any individualized factors.

98.     Based on her experience and tenure with KDP, as well as coverage of the Kronos hack, Kraemer is aware that KDP's illegal practices were imposed on the New Jersey Class members.

99.     New Jersey Class members were all not paid their proper overtime on time, if at all, when they worked in excess of 40 hours per week.

100.    KDP's failure to pay wages and overtime compensation in accordance with New Jersey law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the New Jersey Class members.

101.    Kraemer's experiences are therefore typical of the experiences of the New Jersey Class members.

102.    Kraemer has no interest contrary to, or in conflict with, the members of the New Jersey Class. Like each member of the proposed class, Kraemer has an interest in obtaining the unpaid wages and other damages owed under the law.

103.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

104.    Absent this action, many New Jersey Class members likely will not obtain redress of their injuries and KDP will reap the unjust benefits of violating New Jersey law.

105.    Furthermore, even if some of the New Jersey Class members could afford individual litigation against KDP, it would be unduly burdensome to the judicial system.

106.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

107.    The questions of law and fact common to each of the New Jersey Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.   Whether KDP paid Kraemer and the New Jersey Class members overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

b.   Whether KDP's failure to pay overtime at the rates required by law violated New Jersey's wage and hour laws;

c.   Whether Kraemer and the New Jersey Class members were paid all wages due within the periods of time allowed by the NJWPL;

d.   Whether KDP's failure to timely pay wages due to Kraemer and the New Jersey Class members violated the NJWPL; and

e.   Whether KDP's NJWPL violations were committed knowingly.

108.   Kraemer's claims are typical of the New Jersey Class members. Kraemer and the New Jersey Class members have all sustained damages arising out of KDP's illegal and uniform employment policies.

109.   Kraemer knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

110.   Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO KRAEMER AND THE FLSA COLLECTIVE

111.   Kraemer incorporates all other allegations.

112.   By failing to pay Kraemer and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, KDP violated the FLSA. 29 U.S.C. § 207(a).

113.   KDP owes Kraemer and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

114.   Likewise, KDP owes Kraemer and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

115.   KDP knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

116.   Because KDP knew, or showed reckless disregard for whether, its pay practices violated the FLSA, KDP owes these wages for at least the past three years.

117.   KDP's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

118.   Because KDP's decision not to pay overtime was not made in good faith, KDP also owes Kraemer and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

119.   Accordingly, Kraemer and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE NJSWHL AS TO KRAEMER AND THE NEW JERSEY CLASS

120.   Kraemer incorporates all other allegations.

121.   The conduct alleged in this Complaint violates the NJWHL.

122.   KDP was and is an "employer" within the meaning of the NJWHL.

123.   At all relevant times, KDP employed Kraemer and the other New Jersey Class members as "employees" within the meaning of the NJSWHL.

124.    The NJSWHL, N.J. Stat. Ann. § 34:11-56a4(b), requires an employer like KDP to pay overtime to all non-exempt employees.

125.    Kraemer and the other New Jersey Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

126.    The NJSWHL, N.J. Stat. Ann. § 34:11-56a4(b), requires overtime to be paid at a rate of no less than 1.5x the employee's regular hourly rate for each hour of working time in excess of 40 each week.

127.    Within the applicable limitations period, KDP had a policy and practice of failing to pay proper overtime to the New Jersey Class members for their hours worked in excess of 40 hours per week.

128.    As a result of KDP's failure to pay proper overtime to Kraemer and the New Jersey Class members for work performed in excess of 40 hours in a workweek, KDP violated the NJSWHL.

129.    Kraemer and the New Jersey Class members are entitled to overtime wages under the NJSWHL in an amount equal to 1.5x their rates of pay, liquidated damages, attorney's fees, costs, penalties, interest, and all other legal and equitable relief provided by the NJSWHL, N.J. Stat. Ann. § 34:11-56a25, and the New Jersey Administrative Code, § 12:56-1.5.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE NJWPL AS TO KRAEMER AND THE NEW JERSEY CLASS

130.    Kraemer incorporates all other allegations.

131.    The conduct alleged in this Complaint violates the NJWPL.

132.    KDP was and is an "employer" within the meaning of the NJWPL. N.J. Stat. Ann. § 34:11-4.1(a).

133.    At all relevant times, KDP employed Kraemer and the other New Jersey Class members as "employees" within the meaning of the NJWPL. N.J. Stat. Ann. § 34:11-4.1(b).

134.    Kraemer and the other New Jersey Classs members' earned wages for their work for KDP includes all monetary compensation for their labor and services. N.J. Stat. Ann. § 34:11-4.1(c).

135.    The NJWPL requires an employer like KDP to pay the full amount of wages due to each employee at least twice each month on regular, pre-designated paydays. N.J. Stat. Ann. § 34:11-4.2.

136.    The NJWPL requires an employer like KDP to pay all wages due to employees within 10 days after the end of the period in which the wages were earned. N.J. Stat. Ann. § 34:11-4.2.

137.    KDP knew it had to pay Kraemer and the New Jersey Class members all wages due within the time provided by the NJWPL, but did not do so.

138.    Within the applicable limitations period, KDP had a policy and practice of failing to pay all wages due within the time period allowed under the NJWPL.

139.    As a result of KDP's failure to timely pay all wages due to Kraemer and the New Jersey Class members, KDP violated the NJWPL.

140.    Kraemer and the New Jersey Class members are entitled to their unpaid wages, liquidated damages of twice the amount of unpaid wages, attorney's fees, costs, penalties, interest, and all other legal and equitable relief provided by the NJWPL, N.J. Stat. Ann. § 34:11-4.10(c).

**RELIEF SOUGHT**

Kraemer prays for judgment against KDP as follows:

a.      For an order certifying a collective action for the FLSA claims;

b.      For an order certifying a class action for the New Jersey law claims;

c.      For an order finding KDP liable for violations of federal wage laws with respect to Kraemer and all FLSA Collective members covered by this case;

d.      For an order finding KDP liable for violations of New Jersey wage laws with respect to Kraemer and all New Jersey Class members covered by this case;

e.      For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Kraemer and all FLSA Collective members covered by this case;

f.      For a judgment awarding all unpaid wages, liquidated damages, and penalties under New Jersey wage laws to Kraemer and all New Jersey Class members covered by this case;

g.      For an equitable accounting and restitution of wages due to Kraemer and all FLSA Collective and New Jersey Class members members covered by this case;

h.      For a judgment awarding attorneys' fees to Kraemer and all FLSA Collective and New Jersey Class members covered by this case;

i.      For a judgment awarding costs of this action to Kraemer and all FLSA Collective and New Jersey Class members covered by this case;

j.      For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Kraemer and all FLSA Collective and New Jersey Class members covered by this case; and

k.      For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Kelsey Raycroft Rose*

By: _____

**Kelsey Raycroft Rose**
**MORGAN & MORGAN, P.A.**
12 Ericsson St., Ste. 2F

Boston, MA 02122
Telephone:    (857) 383-4903
Facsimile:    (857) 383-4928
Email:        kraycroftrose@forthepeople.com

**Andrew R. Frisch, Esq.**
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Rd., Ste. 4000
Plantation, FL 33324
Telephone:    (954) WORKERS
Facsimile:    (954) 327-3013
Email: afrisch@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**